IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DONALD F. GREENE and <br> NICOLE F. GREENE <br>         Plaintiffs, <br><br> v. <br><br> OSRAM SYLVANIA Inc. and <br> LEDVANCE LLC <br><br>         Defendants. | CIVIL NO.: 3:21-cv-00256-TAV-JEM |

### DEFENDANT LEDVANCE LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN LIMITED TESTIMONY OF JOSHUA MOSS, M.D.

In this motion, LEDVANCE seeks to exclude Dr. Joshua Moss only from testifying at trial that based on his experience having served as an orthopedic surgeon for military personnel, "the traumatic laceration of tissue from Mr. Greene's left arm was the result of a highly violent force, similar to that experienced by soldiers injured by explosive ordnance or fragmentation devices."

At his deposition, Dr. Moss admitted that he did not inspect any fluorescent lamps, is not experienced in the design or manufacture of fluorescent lamps, could not identify the lamp at issue in this case, and does not know the mass of glass fragments from a broken lamp or the atmospheric pressure inside the lamp. As such, he admitted that he could not identify any component of a fluorescent lamp that could cause an explosion.

Dr. Moss did not perform any experiments to determine whether Mr. Greene's injury could have been caused by impaling an arm on the broken end of a fluorescent lamp. In fact, he admitted that Mr. Greene's injuries could have been caused in that way, which renders unreliable his opinion that the injuries were caused by an explosion.

1

Any opinion that Dr. Moss might offer about the way Mr. Greene's injuries occurred would be pure speculation and not based on any reliable methodology as required by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

LEDVANCE does not seek to exclude Dr. Moss from testifying at trial about the medical care that he provided to Mr. Greene and about Mr. Greene's injuries that Dr. Moss personally observed. LEDVANCE also does not seek to exclude Dr. Moss from testifying that he observed injuries like those suffered by Mr. Greene during his time as an orthopedic surgeon in the United States Navy.

LEDVANCE only requests that the Court exclude Dr. Moss from offering any opinions about the fluorescent lamp at issue or the way broken glass from that lamp may have injured Mr. Greene, given Dr. Moss's concessions that he lacks the experience to offer such opinions, performed no investigation to test those opinions, and conceded that there was an alternate cause for Mr. Greene's injuries.

## BACKGROUND

In this products liability case, Plaintiffs allege that while Donald Greene was changing an 8-foot Sylvania fluorescent tube bulb, the bulb exploded, causing Mr. Greene serious injury to his left bicep. (D.E. 26 ¶ 4). Defendant has proffered undisputed expert testimony that fluorescent light bulbs cannot explode because they are filled to a pressure substantially lower than that of the atmosphere surrounding them. (D.E. 27-2 ¶ 12).

After Mr. Greene was injured by what he claims was an exploding light bulb, he was taken to the hospital by ambulance. (Greene Dep. 49:16-51:9, **attached to Motion as Exhibit 1**). At the hospital, Mr. Greene informed Dr. Christine Seaworth that he did not remember what happened during the accident, and that at the time of his injury he was standing on the ground. (Kelly Dep.

Ex. 10: medical records at 1, **attached to Motion as Exhibit 3**). This differs from the version of events that Mr. Greene now provides, namely that he was standing on a ladder removing the light bulb when it exploded. (Greene Dep. 43-46).

During his initial hospitalization, Mr. Greene's left bicep wound was surgically treated and closed by Dr. Seaworth. (Moss Designation at 2, **attached to Motion as Exhibit 4**). Subsequently, Mr. Greene underwent two additional surgical procedures on his left bicep performed by orthopedic surgeon Dr. Moss, and he continued to see Dr. Moss in the office for office-based treatment. (Moss Designation at 3).

Pursuant to Rule 26(a)(2)(c), Plaintiffs provided an expert disclosure regarding Dr. Moss, setting forth opinions that he is expected to provide at trial. (Moss Designation). Dr. Moss was deposed on June 20, 2023. (Moss Dep. at 1, **attached to Motion as Exhibit 2**). According to Dr. Moss's expert disclosure, Plaintiffs plan to offer Dr. Moss to testify that based on his experience having served as an orthopedic surgeon for military personnel, "the traumatic laceration of tissue from Mr. Greene's left arm was the result of a highly violent force, similar to that experienced by soldiers injured by explosive ordnance or fragmentation devices. This is as opposed to the type of injury that he would expect from Mr. Greene having simply fallen on the bulb." (Moss Designation ¶ 9).

## LEGAL STANDARD

Federal Rule of Evidence 702 permits a witness who is qualified as an expert by knowledge, skill, experience, training, or education to provide opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

As set forth in the Supreme Court's *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), opinion, trial courts are charged with the role of a gatekeeper, ensuring that unreliable expert testimony does not make it in front of a jury. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007). In its role as gatekeeper, the district court "is imbued with discretion in determining whether or not a proposed expert's testimony is admissible, based on whether it is both relevant and reliable." *Id.*

"The district court acts as a gatekeeper under this framework, ensuring only reliable expert evidence makes it to the jury." *Williams v. Syphan*, No. 22-3222, 2023 WL 1305084, at *2 (6th Cir. Jan. 31, 2023). "Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir.2009)).

The party proffering expert testimony bears the burden of showing by a preponderance of proof that the testimony at issue is admissible by being relevant and reliable. *In re Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 187 (6th Cir. 2012). The reliability assessment must involve an initial determination that the witness seeking to render the opinion is qualified in the designated area, and a second determination that the proffered testimony is 'reliable' in the sense that the testimony is grounded upon sound principles, whether scientific, technical, or relating to other specialized knowledge." *Downs v. Perstorp Components, Inc.*, 126 F. Supp. 2d 1090, 1123 (E.D. Tenn. 1999). Treating physicians are by no means excepted from these requirements. *See, e.g.*, *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 673 (6th Cir. 2010) ("The ability to diagnose

4

medical conditions is not remotely the same ... as the ability to deduce ... in a scientifically reliable manner, the causes of those medical conditions.").

## ARGUMENT

Dr. Moss's opinion that Mr. Greene's arm injury was caused by an explosion is not reliable. Dr. Moss never documented in Mr. Greene's medical record that Mr. Greene's injury is like one experienced by soldiers injured by explosive ordnance or fragmentation devices. (Moss Dep. at 25:25-26:9). Notably, Dr. Moss did not assume Mr. Greene's care until after his wound was initially repaired by Dr. Seaworth. (Moss Dep. at 11:17-12:8). He, thus, would not have seen the injury in-person until after it was initially repaired.

Further, Dr. Moss has no experience with fluorescent lamps such that he could offer a reliable opinion that one "exploded."

> Q: So have you inspected an eight-foot fluorescent lamp called a T-12 in this case?
>
> A: No.
>
> Q: Are you experienced in the design of fluorescent lamps?
>
> A: I am not.
>
> Q: Are you experienced in the manufacture of fluorescent lamps?
>
> A: No.
>
> Q: Have you measured or evaluated the glass that is used to manufacture fluorescent lamps?
>
> A: No.
>
> Q: Can you identify the fluorescent lamp that was at issue in this case?
>
> A: No.
>
> Q: Okay. Do you know what the mass of a fragment of glass is over a given area from a fluorescent lamp?

> A: No.
>
> Q: Okay. Do you know what the atmospheric pressure is inside a fluorescent lamp?
>
> A: No.
>
> Q: Do you know if it's more or less than the atmospheric pressure outside the lamp?
>
> A: No.
>
> . . .
>
> Q: What—please identify any component of a fluorescent lamp that could cause an explosion.
>
> A: I think I've established that I'm not an expert on fluorescent lamps.

(Moss Dep. at 23:1–23:25, 24:20–24). Dr. Moss admits he is not an expert on fluorescent lamps and cannot offer any opinions about their manufacture or design, including an opinion that such a lamp could spontaneously explode. *See id.*

Further, Dr. Moss conducted no investigation to determine the way the broken lamp caused Mr. Greene's injuries.

> Q: Okay. Have you performed any experiments to determine whether glass can be propelled from a fluorescent lamp by striking it on an object and shattering it?
>
> A: I have not.
>
> Q: Okay. Have you performed any experiments to determine what type of injury could be created if one impaled one's bicep on the broken end of a fluorescent lamp?
>
> A: No.

*Id.* at 24:25–25:9.

Dr. Moss admits that his opinion that Mr. Greene's arm injury resembles injuries suffered by soldiers in battle is based entirely on "the scope and extent of the injury to his left arm." *Id.* at 21:4–8. He agreed, however, that if a glass tube that is more than an inch wide was rammed through someone's bicep it could cause substantial damage.

> Q: If I took a glass tube that has been broken and is very sharp around the edges, and I essentially rammed it through someone's bicep, so more than an inch wide, do you think I could cause very extreme damage to the bicep?
>
> MR. BURNETTE: Object to the form. Speculation.
>
> A: I'm sure you could cause substantial damage if you rammed broken glass into someone's arm.

*Id.* at 27:10–19.

This testimony confirms that Dr. Moss's opinion that Mr. Greene's injury was caused by an explosion is not reliable since he concedes that there is a viable alternate cause. Plaintiffs' other expert, Mr. Kelly, testified that the fluorescent lamp at issue did not suffer an explosion, as that term is defined in the scientific community. (Kelly Dep. 30:17–31:4, **attached to Motion as Exhibit 6**) ("Q: Okay. So we've gone through the four known types of explosions and whatever happened at this lamp is not consistent with any of those four types. True? A: As defined in [NFPA] 921, yes.")

And because Dr. Moss's opinion that Mr. Greene's bicep injury was caused by the same type of explosion that injured soldiers is not reliable, Dr. Moss should not be permitted to testify to that effect at trial. See *Williams v. Syphan*, No. 22-3222, 2023 WL 1305084, at *2 (6th Cir. Jan. 31, 2023) ("His general invocations of the totality of the evidence and personal experience are precisely the kinds of vague notions of scientific expertise that *Daubert*—through its admonition against admitting expert testimony based on mere "subjective belief or unsupported speculation"— is designed to prevent.").

In essence, Dr. Moss is attempting to perform a differential diagnosis as to the way Mr. Greene was injured. The Sixth Circuit has provided guidance for when a doctor can reliably offer such an opinion. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010). In *Tamraz*, the court explained that for a differential diagnosis to be reliable, it must answer three questions affirmatively: "(1) Did the expert make an accurate diagnosis of the nature of the disease? (2) Did the expert reliably rule in the possible causes of it? (3) Did the expert reliably rule out the rejected causes?" *Id.* (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir. 2009)).

Here, Dr. Moss's opinion that Mr. Greene's injuries were the result of a highly violent force like that experienced by soldiers fails the second and third of these questions. Dr. Moss did no work to examine possible causes or to reject other possible explanations. Indeed, he admitted that the injuries could have been the result of a glass tube that had already been broken that was rammed into Mr. Greene's arm. (Moss. Dep. at 27:10–19). Because he failed to rule in or rule out alternate causes and is merely speculating that Mr. Greene's injuries are "similar" to those he observed in the military, this opinion is not supported by a valid methodology, fails to satisfy Rule 702, and should be excluded.

## CONCLUSION

For the foregoing reasons, LEDVANCE respectfully requests the Court preclude Dr. Moss from offering opinion testimony that Mr. Greene's bicep injury was caused by an explosion.

Respectfully submitted this the 26th day of July, 2023.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

/s/ Ashley B. Gibson
Ashley B. Gibson, BPR #034140
633 Chestnut Street, Suite 1900
Chattanooga, Tennessee 37450
Telephone: (423) 752-4403
Facsimile: (423) 717-5845
abgibson@bakerdonelson.com

Brigid M. Carpenter, BPR #018134
West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone: (615) 726-7341
Facsimile: (615) 744-7341
bcarpenter@bakerdonelson.com

**ELLIS & WINTERS LLP**

Andrew S. Chamberlin, admitted *pro hac vice*
300 N. Greene Street, Suite 800
Greensboro, North Carolina 27401
Telephone: (336) 217-4193
Facsimile: (336) 217-4198
andrew.chamberlin@elliswinters.com

James M. Weiss, admitted *pro hac vice*
4131 Parklake Avenue, Suite 400
Raleigh, North Carolina 27612
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
james.weiss@elliswinters.com

*Attorneys for Defendants OSRAM Sylvania, Inc. and LEDVANCE LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and exact copy of the foregoing DEFENDANT LEDVANCE, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN LIMITED TESTIMONY OF JOSHUA MOSS, MD has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated in the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

      This the 26th day of July, 2023.

      /s/ Ashley B. Gibson