UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DONALD F. GREENE and <br> NICOLE F. GREENE, <br><br> Plaintiffs, <br><br> v. <br><br> LEDVANCE LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> )    No. 3:21-CV-256-TAV-JEM <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant's Motion to Exclude Certain Limited Testimony of Plaintiff's Expert Witness, Joshua Moss, M.D. [Doc. 43]. Plaintiffs filed a response in opposition to the motion [Doc. 49], and Defendant filed a reply [Doc. 52]. The parties appeared before the undersigned on November 16, 2023, for a motion hearing. Attorneys Paul Wehmeier and R. Kim Burnette appeared on behalf of Plaintiffs. Attorneys Andrew Chamberlin, James Weiss, and Brigid Carpenter appeared on behalf of Defendant. To the extent explained below, the Court **GRANTS** Defendant's motion [**Doc. 43**].

I.    BACKGROUND

"On June 11, 2020, while working as a site manager for Waste Connections . . . Plaintiff Donald Greene was in the process of changing a fluorescent lightbulb located on a side wall within the confines of [a] garage" [Doc. 26 ¶ 4]. According to the allegations in the First Amended Complaint, while Plaintiff Donald Greene ("Plaintiff Greene") was removing the light bulb, it "suddenly, and without warning, violently exploded" [*Id.*]. Following the incident, an ambulance

took Plaintiff Greene to the hospital [Doc. 44 p. 2 (citation omitted)]. At the hospital, Christine Seaworth, M.D., surgically treated and closed Plaintiff Greene's left bicep wound [Doc. 43-3]. Subsequently, Joshua P. Moss, M.D., an orthopedic surgeon, performed two additional surgeries on Plaintiff Greene's left bicep, and he continued to treat Plaintiff Greene's injuries [*See* Doc. 43-4].

As part of their expert disclosures, Plaintiffs disclosed Dr. Moss as Plaintiff Greene's treating physician [*Id.*]. Dr. Moss intends to testify on the following subject matters:

> (1) the causation, medical necessity and details of the various evaluations and treatment rendered to Mr. Greene;
>
> (2) the impact of the injury on Mr. Greene's physical abilities, functional capacity, permanent impairment, and limitations;
>
> (3) Mr. Greene's current condition and potential need for future treatment; and
>
> (4) the reasonableness and necessity of the medical bills and expenses associated with the evaluation and treatment of Mr. Greene from June 11, 2020, through the present date.

[*Id*. at 2]. In relevant part, the summary of his opinions are that:

> 1. On June 11, 2020, Donald Greene sustained a serious, painful and debilitating injury to his left arm when a fluorescent light bulb that he was changing exploded, causing immediate tissue disruption and bleeding in the area of the left biceps.
>
> * * *
>
> 9. The history provided by Mr. Greene was that his left arm was injured by an exploding fluorescent lightbulb on June 11, 2020. The injuries sustained by Mr. Greene were consistent with that history as Mr. Greene described. In fact, based on the experience of Dr. Moss having served as an orthopedic surgeon for military personnel, he is expected to testify that the traumatic laceration of tissue from Mr. Greene's left harm was the result of a highly violent force, similar to that experienced by soldiers injured by explosive ordnance of fragmentation devices. This is as opposed to the type of

2

injury that he would expect from Mr. Greene having simply fallen on the bulb.

[*Id*. at 2, 4–5].

Defendant moves to exclude "certain limited testimony" of Dr. Moss: "any opinions about the fluorescent lamp at issue or the way broken glass from that lamp may have injured Mr. Greene" [Doc. 43]. More specifically, it "moves to exclude Dr. Moss's proposed testimony that [Plaintiff] Greene's injury was caused by an explosion or that based on Dr. Moss's experience having served as an orthopedic surgeon for military personnel, 'the traumatic laceration of tissue from [Plaintiff] Greene's left arm was the result of a highly violent force, similar to that experienced by soldiers injured by explosive ordnance or fragmentation devices'" [*Id*. at 2 (citation omitted)].

For grounds, Defendant states that Dr. Moss does not have sufficient knowledge with respect to fluorescent light bulbs and that he "did not perform any experiments to determine whether Mr. Greene's injury could have been caused by impaling an arm on the broken end of a fluorescent lamp" [Doc. 44 p. 1]. In addition, Defendant submits that Dr. Moss has no experience designing or manufacturing fluorescent light bulbs [*Id*.]. Relying on Dr. Moss's deposition testimony, Defendant argues that he conceded that "there is a viable alternative cause" for Plaintiff Greene's injury [*Id*. at 7]. Defendant requests that the Court exclude these opinions as unreliable.

Plaintiffs respond that Dr. Moss's anticipated testimony "falls squarely within his expertise" [Doc. 49 p. 1]. In light of his expertise, including his history of serving as an orthopedic surgeon for military personnel, and his treatment of Plaintiff Greene, Plaintiffs argue that Dr. Moss's opinions are reliable. Plaintiffs acknowledge that Dr. Moss is not an expert on light bulbs, but they assert that Defendant has not set forth a valid basis to exclude his opinions. Plaintiffs argue that Defendant mischaracterizes Dr. Moss's deposition testimony and that its challenges to his opinions are more appropriate for cross examination.

3

Defendant replies that Dr. Moss cannot offer causation opinions at trial [Doc. 52]. Defendant states that "Dr. Moss has not personally performed any testing to see if [Plaintiff] Greene's injuries could be caused by an allegedly exploding fluorescent lamp[,]" and that "[h]e did not perform any investigation of the accident beyond looking at [Plaintiff] Greene's wounds" [*Id*. at 2 (citations omitted)]. In addition, Defendant submits Dr. Moss does not have any experience with the manufacturing of fluorescent light bulbs. According to Defendant, the exclusion of Dr. Moss's causation opinion is appropriate.

At the hearing, Defendant clarified that it is not challenging Dr. Moss's opinion that Plaintiff Greene's injury is similar to what he saw on the battlefield or that Plaintiff Greene's injuries were from glass. Defendant also stated that it was less concerned about Dr. Moss's testimony that the injuries were consistent with a "highly violative force." But Defendant argued that Dr. Moss should be precluded from testifying that Plaintiff Greene was injured by an exploding or imploding light bulb. Plaintiffs responded that Defendant's challenges to Dr. Moss's opinions go to the weight and not to their admissibility.

## II. STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

4

> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[1] A district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, at 970–71 (M.D. Tenn. 2002) (citation

---

[1] Rule 702 was amended on December 1, 2023. The parties dispute whether the Court should apply the current version of Rule 702 or the prior version in deciding the issues related to Dr. Moss. The Court utilizes the current version of Rule 702 because it governs "insofar as just and practicable, all proceedings then pending." Prop. Ams. to the Fed. R. Evid., 344 F.R.D. 850, 851. *See also United States v. Candelaria*, No. 22-CR-767 KWR, 2023 WL 8185932, at *1 n.1 (D.N.M. Nov. 27, 2023) (applying amendment before the effective date of the amendment because the trial was scheduled to occur after the effective date); *Andrews v. Brethern Mut. Ins. Co.*, No. 4:19-cv-01107, 2023 WL 660710, at *6 (M.D. Pa. Oct. 12, 2023) (taking "heed of the forthcoming changes so as to avoid the misapplication of Rule 702 identified by the Advisory Committee"). But the result would be the same regardless of whether the Court applied the current or prior version of Rule 702. The changes to the rule are not substantive. *Nash-Perry v. City of Bakersfield*, No. 118CV01512JLTCDB, 2023 WL 8261305, at *13 (E.D. Cal. Nov. 29, 2023). Rather, "[t]he amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000--requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard." Fed. R. Evid. 702 advisory committee's note to 2023 amendments.

omitted), *aff'd*, 89 F. App'x 927 (6th Cir. 2003). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"District courts generally have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Kumho Tire*, 526 U.S. at 142). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

### III. ANALYSIS

"[T]here is a fundamental distinction between a treating physician's ability to render a medical diagnosis based on clinical experience and her ability to render an opinion on causation of the patient's injuries." *In re Aredia & Zometa Prods. Liab. Litig.*, 754 F. Supp. 2d 934, 937 (M.D. Tenn. 2010) (citation omitted); *see also Morritt v. Stryker Corp.*, 973 F. Supp. 2d 177, 187 (E.D.N.Y. 2013) (finding that the orthopedic surgeon could testify as to his diagnosis of polyethylene wear, but he could not "offer his opinion regarding the *source* of the polyethylene wear"); *Wynacht v. Beckman Instruments, Inc.*, 113 F. Supp. 2d 1205, 1211 (E.D. Tenn. 2000) (excluding treating physician's "opinion that [the plaintiff's] medical condition was caused by chemicals, fumes, or inhalants from the [the product at issue in the litigation]"). Indeed, "[t]he treating physician for whom no expert report is supplied is not permitted to go beyond the information acquired or the opinion reached as a result of the treating relationship to opine as to the causation of any injury." *In re Aredia & Zometa Prods. Liab. Litig.*, 754 F. Supp. 2d at 937.

6

Plaintiffs assert that Dr. Moss has frequently treated individuals with glass-related injuries. Even so, Dr. Moss testified that, other than installing them in his garage, he was not familiar with fluorescent light bulbs and that he is not an expert on fluorescent light bulbs [Doc. 49-1 p. 7]. *See Rolen v. Hansen Beverage Co.*, 193 F. App'x 468, 474 (6th Cir. 2006) (affirming the district court's decision to exclude the plaintiffs' expert, noting that "by his own admission [the expert] knew nothing about [the product], including how or with what it was made"); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded."). In addition, other than relying on Plaintiff Greene's account, Dr. Moss has not performed any investigation of the accident to determine that the light bulb exploded. *See Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 713 (11th Cir. 2008) (finding that the treating physician did not provide a reliable basis for his testimony that a taser gun caused the plaintiff's injury). Further, Dr. Moss conceded that he could not rule out alternative causes for Plaintiff's injuries [Doc. 49-1 p. 27].

The Court therefore finds that Dr. Moss may not offer any opinions about the fluorescent lamp at issue or the way broken glass from that lamp may have injured Plaintiff.

## IV. CONCLUSION

To the extent explained above, the Court **GRANTS** Defendant's Motion to Exclude Certain Limited Testimony of Plaintiff's Expert Witness, Joshua Moss, M.D. [**Doc. 43**].

**IT IS SO ORDERED.**

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge