UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| DONALD F. GREENE and | ) | |
| NICOLE F. GREENE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:21-CV-256-TAV-JEM |
| | ) | |
| LEDVANCE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the Court is defendant's Motion in Limine Regarding Loss of Earning Capacity [Doc. 92]. Defendant filed this motion just a few days before the case's Final Pretrial Conference, which took place on September 9, 2024. At the Final Pretrial Conference, plaintiffs were ordered to respond to defendant's motion in limine, and if the defendant so wished, it could reply to plaintiffs' response. Plaintiffs have responded [Doc. 94], and defendant has replied [Doc. 95]. This matter is now ripe. For the reasons explained herein, defendant's motion is **DENIED in part** and **GRANTED in part**.

I. **Motion in Limine Standard**

"Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and focus pertinent issues for the jury's consideration." *United States v. Amir*, No. 1:10-CR-439, 2011 WL 3862013, at *1 (N.D. Ohio Aug. 31, 2011) (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). Evidence should be excluded on a motion in limine only if it is clearly inadmissible. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "A ruling on a motion in limine is no more than

a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

## II.     Analysis

The defendant moves the Court to preclude plaintiffs from introducing previously undisclosed evidence regarding plaintiff Donald Greene's ("Mr. Greene") alleged loss of earning capacity [Doc. 92, p. 1]. Defendant argues that plaintiffs failed to supplement their discovery responses or disclosures as required by Federal Rules of Civil Procedure 26(e)(1), providing no calculation, computation, or evidence as to Mr. Greene's loss of earning capacity, despite plaintiffs' burden to prove any difference in Mr. Greene's earning capacity post-accident [*Id.* at 1, 4]. In support, defendant cites to plaintiffs' response to its Interrogatory No. 12 in which the defendant asked plaintiffs to identify Mr. Greene's loss of earning capacity [*Id.* at 2]. Plaintiffs objected to the interrogatory to the extent it sought material from consulting experts "that is generally not discoverable under the Federal Rules," but plaintiffs did state:

> [D]ue to the permanent restrictions arising from his extensive injuries, Mr. Greene would have significant challenges (and associated damages) if he ever had to find another job. He believes he would never be able to earn a substantially equivalent salary to the one he earns now arising from 37 years of employment. This is so because he did not graduate from high school, is 55 years old, and has permanent restrictions that leave him extremely limited.

*Id.* Though plaintiffs indicated that they would supplement their response as necessary, defendant argues that such supplementing never occurred, nor did plaintiffs disclose any expert witnesses to support this particular claim [*Id.*].

Defendant then states that in April 2024, plaintiffs' counsel informed defendant's counsel via email that Mr. Greene had lost his job at Waste Connections, where he had been employed at the time of the accident [*Id.* at 3]. Plaintiffs communicated they were not blaming the job loss on the accident at issue, but defendant asserts that earlier this week, plaintiffs have stated that the job loss "serves to bring more clearly into focus [Mr. Greene's] loss of earning capacity claim," causing this instant motion to be filed [*Id.*].

Given the above, defendant argues that any undisclosed evidence should be excluded regarding Mr. Greene's loss of earning capacity [*Id.* at 5]. In support, defendant refers to and applies the factors listed in *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015),[1] stating: (1) it would be unfair surprise to defendant to disclose this evidence at the trial; (2) defendant has no ability to cure this disclosure; (3) allowing the evidence would disrupt trial; (4) this evidence is not important to the issue of liability; and (5) plaintiffs have no excuse for their failure to disclose the evidence [*Id.* at 5–6].

In response to defendant's motion, plaintiffs first submit that defendant's claim of "surprise" is unfounded [Doc. 94, p. 1]. In support, plaintiffs note that a claim for loss of earning capacity was included in their original Complaint, as well as their First Amended Complaint, and the same claim was outlined in plaintiffs' initial disclosures [*Id.* at 1–2].

---

[1] "In order to assess whether a party's omitted or late disclosure is 'substantially justified' or 'harmless,' the Fourth Circuit considers five factors, which we now also adopt: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Howe*, 801 F.3d at 747–48 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)).

Despite defendant's contention, plaintiffs argue that they have submitted evidence regarding Mr. Greene's loss of earning capacity, citing to the Interrogatory No. 12 response which includes defendant's age, educational background, and permanent restrictions due to his accident as well as the fact that Mr. Greene produced his available earnings information while he was employed at Waste Connections [*Id.* at 2, 5]. Plaintiffs assert that defendant had ample opportunity to explore the loss of earning capacity claim when Mr. Greene was deposed on January 18, 2023 [*Id.* at 2].

Regarding the April 2024 email defendant references, plaintiffs submitted the communication more fully, beginning with their initial email:

> Also, we should advise you of another change of circumstances relating to Donald Greene's employment status. He was notified on March 20 that he was being terminated from his employment. This is very unfortunate for the Greenes, as Donald had worked for these folks for nearly 40 years, essentially all of his adult life. He is looking for other employment, but we suspect that it is going to be extremely difficult, nay, likely impossible for him to secure any sort of employment that would be comparable in pay and benefits, as he is not a high school graduate, and is laboring under stringent permanent restrictions.
>
> Of course, with this change of circumstances, unless Mr. Greene's work situation were to change very quickly, *we will obviously now be focusing more on his loss of earning capacity*.
>
> Please feel free to contact us to discuss these issues further.

[*Id.* at 3–4 (emphasis added)]. Defendant's counsel responded, in pertinent part:

> Thank you for your April 2, 2024 letter. First off, I wanted to say how sorry we were to hear about Mr. Greene being let go after almost 40 years with Waste Connections. If you contend his change in job status was caused by his injury and relevant to Mr. Greene's damages, then it may be necessary to re-open his deposition and the deposition of his employer.

[*Id.* at 4]. Plaintiffs' counsel informed defendant's counsel that plaintiffs were not blaming Mr. Greene's job loss on the accident [*Id.*].

After this communication, plaintiffs state they heard nothing further on this issue from defendant until the filing of this instant motion [*Id.*]. Plaintiffs argue that while defendant claims that it only recently became aware of plaintiffs' intention to focus on Mr. Greene's job loss in respect to his loss of earning capacity claim, this is false given the above communications [*Id.*] Overall, plaintiffs argue that defendant did nothing to seek additional information regarding plaintiffs' loss of earning capacity claim [*Id.* at 4–5].

Plaintiffs submit that all the evidence they have disclosed, as well as defendant's new employment and salary, would be relevant to the issue of Mr. Greene's lost earning capacity [*Id.* at 5–6].[2] However, "[t]here is no computation that Plaintiffs can specifically request the jury use," but, plaintiffs argue, this is not a barrier to an award of damages [*Id.* at 6]. Regarding defendant's position it would be prejudiced by the inclusion of undisclosed evidence, plaintiffs contend that (1) no surprise exists as defendant was always on notice of the anticipated difficulty Mr. Greene would encounter if he ever lost his Waste Connections employment, and plaintiffs supplied information as to Mr. Greene's age and educational background; (2) any such incident of surprise has since been cured due to plaintiffs' supplemental interrogatory response [Doc. 94-1]; (3) the trial would not be

---

[2] Though plaintiffs appear to assert there has been no failure to disclose any relevant evidence, plaintiffs attach a supplement to their initial disclosures and discovery responses [Doc. 94-1]. This supplement includes plaintiffs' lack of expert proof, Mr. Greene's job loss, Mr. Greene's job search, Mr. Greene's new job and its salary, and Mr. Greene's pursuit to acquire his GED.

disrupted by the proof on this issue as it is very limited; (4) depriving plaintiffs of the opportunity to present such evidence as to loss earning capacity would harm plaintiffs in their ability to prove their case; and (5) based on the communications between the parties, defendant was on notice of the loss of earning capacity issue earlier than it contends [*Id.* at 7–8].

In defendant's reply, defendant points to plaintiffs' failure to disclose Mr. Greene's job search and new employment, citing to the Rule 26(e)(1) requirement of ongoing, supplemental disclosure, as a reason for exclusion [Doc. 95, p. 1]. Defendant also argues that Mr. Greene's salary at Waste Connections is completely irrelevant, given plaintiffs statement that Mr. Greene did not lose his job due to his injury; defendants further argue that Mr. Greene's past salary is not indicative of the market value of a 57-year-old man, with an 11th grade education, and limited work experience [*Id.* at 2–3]. Defendant contends that if plaintiffs had designated an expert, or at least disclosed a loss of earning capacity computation, defendant would have retained its own expert [*Id.* at 3].

Both parties agree that the leading case on loss of earning capacity claims is *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). "Loss or impairment of future earning capacity is an element of damages in a personal injury action[,]" and this damages amount is "*generally* arrived at by comparing what the person would have been capable of earning but for the injury with what the person is capable of earning after the injury." *Overstreet*, 4 S.W.3d at 703 (emphasis added) (citations omitted). While the injured party has the "burden of proving his . . . impairment of earning capacity damages[,]" such proof "is, to some extent, speculative and imprecise." *Id.* at 704

(citations omitted). Imprecision, however, is "not grounds for excluding the evidence[,]" and in fact, "courts have found competent and admissible any evidence which tends to prove the injured person's present earning capacity and the probability of its increase or decrease in the future." *Id.* (citations omitted). Numerous factors exist in determining a person's loss of earning capacity including "the injured person's age, health, intelligence, capacity and ability to work, experience, training, record of employment, and future avenues of employment." *Id.* (citations omitted).[3]

As to the issue of disclosure, the Court returns to the *Howe* factors. In that regard, the Court notes that "[d]istrict courts have broad discretion in applying these factors and need not apply each one rigidly. The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97-ART-EBA, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016)). And, according to the Sixth Circuit, the task is to "avoid unduly harsh penalties in a variety of situations[,]" where the party's failure is substantially justified or harmless. *Howe*, 801 F.3d at 747 (quoting Fed. R. Civ. P. 37(c)(1) advisory committee's note to 1993 amendment).

With this in mind, the Court addresses the *Howe* factors as pertinent here. First, while previously undisclosed evidence revealed itself at the Final Pretrial Conference, the

---

[3] Tennessee Pattern Jury Instruction 14.01 further instructs that in determining loss of earning capacity, the fact finder may consider, among other things, "the plaintiff's health, age, character, occupation, past earnings, intelligence, skill, talents, experience and record of employment."

defendant appears to contend that *any* evidence regarding Mr. Greene's loss of earning capacity would be surprise to defendant [Doc. 92, p. 5]. The Court does not find that total surprise exists here. Through their initial response to Interrogatory No. 12, plaintiffs disclosed Mr. Greene's age and education record, both relevant to earning capacity, as well as Mr. Greene's concern that, if he ever had to find another job, he would have significant challenges and associated damages [Doc. 92, p. 2; Doc. 94, p. 2]. Furthermore, the Court finds that the April 2024 email communications, while falling short of a formal supplement, did put the defendant on notice of Mr. Greene's job loss and that plaintiffs would "be focusing more on his loss of earning capacity" at trial [Doc. 94, p. 3].

Additionally, since the Final Pretrial Conference, plaintiffs have supplemented their initial response to Interrogatory No. 12, including information of Mr. Greene's job search, his new employment, and his pursuit of a GED [Doc. 94-1]. Plaintiffs have also offered for defendant to further depose Mr. Greene as to the matter of loss earning capacity. The Court finds this supplement and offer to have some curative effect. However, given the timing of disclosure and the belated nature of the proffered cure, the Court finds it appropriate, in its discretion, to allow defendant, if it so chooses, to file a motion to continue in this case for the limited purpose of obtaining a vocational expert witness. The Court finds this avenue to reasonably address defendant's arguments of prejudice while avoiding the harsh remedy of exclusion.

The Court also notes that defendant, in its reply brief, raises the issue of relevancy regarding Mr. Greene's earnings during his employment at Waste Connections [Doc. 94, pp. 2–3]. While Mr. Greene's earnings at Waste Connections do not appear in plaintiffs'

response to Interrogatory No. 12, nor plaintiffs' supplement to their initial response [Doc. 94-1], plaintiffs do state that Mr. Greene's earnings information from Waste Connections was provided to defendant previously [Doc. 94, p. 2]. Defendant does not appear to dispute that such earning information was disclosed, only that it is irrelevant for purposes of proving Mr. Greene's loss of earning capacity. Given relevance is not argued in defendant's opening motion in limine brief [Doc. 92]—the only argument and request being the preclusion of previously undisclosed evidence—the Court will not address such relevance now. Any relevancy arguments the parties may have regarding the evidence of loss of earning capacity, whether disclosed originally or now supplemented, are reserved for trial.

### III. Conclusion

Based upon the parties' April 2024 email communications, plaintiffs' supplement [Doc. 94-1], and plaintiffs' offer to allow defendant to depose Mr. Greene for the limited purpose of the loss of earning capacity claim, defendant's motion in limine [Doc. 92] is **DENIED**. In light of this ruling, however, the Court will allow defendant to file a motion to continue by **Friday, September 13, at 12:00 p.m. Eastern Time** for the limited purpose of obtaining a vocational expert witness, if so desired. If defendant files no such motion, this case will proceed to trial as scheduled on **Tuesday, September 17, 2024, at 9:00 a.m. Eastern Time**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE